UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BARRY SPENCER

vs

BOSTON HERALD
BOSTON GLOBE
JANE DOE REPORTER
JOHN DOE PHOTOGRAPHER
JOHN CRATSLEY
JEFFOREY LOCKE

COMPLAINT
(JURY DEMAND)

Plaintiff would show that:

JURISDICTION AND VENUE

1. At all times mentioned in this complaint, plaintiff Barry Spencer was, and now is, a resident of the County of Suffolk, State of Massaxchusetts.
2. The defendant Boston Herald is, and at all times mentioned in this complaint was, a corporation duly organized and existing under the laws of the State of Massachusetts, with its principal place of business at 70 Fargo St., Boston, MA.
3. The defendant Boston Globe is, and at all times mentioned in this complaint was, a corporation duly organized and existing under the laws of the State of Massachusetts, with its principal place of business at 135 Morrissey Blvd., Boston, MA 02125 or P.O. Box 55819, Boston, MA 02205-5819.
3. The defendant John Cratsley is, and at all times mentioned in this complaint was, an associate judge in suffolk superior court his address is 3 Pemberton Square, Boston, MA 02108
4. The defendant Jeffery Locke is, and at all times mentioned in this complaint was, chief justice in suffolk superior court his address is 3 Pemberton Square, Boston, MA 02108.
5. The defendant Jane Doe is, is at all times mentioned in this complaint was, a reporter for the Herald and Globe or

1

freelance reporter with contracts with both papers and her principal address is with both papers above #2 and #3.

6. The defendant John Doe is, at all times mentioned in this complaint was, a photographer for the Herald and Globe or freelance with contracts with both papers and his principal address is with both papers above #2 and #3.

7. There is complete diversity of citizenship between the plaintiff and the defendant and more than $75,000, exclusive of interest and cost, is in dispute in this action. Therefore, this court has subject metter jurisdiction over this action pursuant to 28 U.S.C. § 133(a).

## CLAIM

8. From 2010 - 2011 and in editorials up until the next year about the same time, both defendant newspapers Herald and globe falsely and wrongfully published and circulated the articles and editorials in response to article about satellite in court hearing involving inmates.

9. These articles were meant to convey that plainitff was in agreement and chosen to be apart it was libel per se and libel per quod and slander per se by its inference.

10. The disseminaton of the Satellite court for inmates article was extensive, and defamatory, false, and invasive statements contained in the article undermined inmate cases and issue, and plaintiffs' several private issues was seen and read by thousands of persons in a sunday and weekly publication and else where within the United States and internationally.

11. The article in question was written by Jane Doe for the Herald and Globe while acting within the course and scope of her employment for both newspapers. Herald and Globe authorized and has subsequently ratified and approved on all of the facts Jane Doe in connection of the article.

12 The article in question was the political baby of John Cratsley and the Chief Justice of Suffolk Superior Court while acting in their personal interest to villify inmate litigators and the waste they cause to the court and

2

taxpayers, albeit, they used their scope of their office for their personal beliefs. Chief Justice and Cratsley conspired to do the article to promote their satellite in camera program.

13. The Superior Court, Chief Justice and Cratsley improperly converted the rights of the plaintiff by making him the poster boy for their program, when plaintiff became aware of the reporter and photographer, he insisted that his privcy is protected and he did not wish to become a part of their article and expressed his question of its constitutionallity Cratsley was furious and became belligerent with plaintiff. See Exhibit 1

14. Plaintiff is informed and believes, and on that basis alleges, that commencing sometime prior to the plaintiff's summary judgement hearing, the defendants, and each of them, knowingly, maliciously, negligently, and willfully conspired and agreed amoung themselves to tortiously or unlawfully injure plaintiff by committing the act alleged here in furtherance of their conspiracy and agreement. Plaintiff is further informed and believes, and on that basis alleges, that the defendants, and each of them knowingly, maliciously, negliently and willfully conspired to formulate, publish, and promote the article for in camera satellite inmate hearings, for, among other things, financial gain, taint the public against inmate complaints and trials, with the knowledge that they would print plaintiffs picture, name and several cases in doing so it would let all who read he is incarcerated so it would destroy the reputation and well-being of plaintiff. Plaintiff is also informed and believes, and on that basis alleges, that the tortious course of conduct and the illegal acts described below were done in furtherance of the objectives of the conspiracy, all to plaintiff's damage, as alleged. Plaintiff is also informed and believes, and on that basis alleges, that defendants, jointly and severally, furthered this conspiracy by ratifying and adopting the acts of each of the other members of the conspiracy. As a legal result of this conspiracy, plaintiff has suffered the damages set forth here,

which were actually and proximately caused jointly and severally by each and every defendant.

15. The Plaintiff is informed and believes, and on that basis alleges, that the defendants, each of them, knew of some or all of the wrongful acts described below, and that they nevertheless assisted in the performance of those wrongful acts, or otherwise participated in furtherance of the conspiracy to the plaintiff's damage, as alleged.

16. The defendants, and each of them, acted with actual malace in connection with the article in question. That is, the defendants each had actual knowledge that the disputed article in the Boston Globe and Herald, included inferences and statements, was degrading to plaintiff's right to privacy, or in the alternative, acted in reckless disregard of the truth or falsity of the statement in that article.

17. The defendants, each of them, had knowledge that the publication and dissemination of the in camera satellite hearings for inmates would have injurious impact on plaintiff worldwide, but particularly in the County of Suffolk, Massachusetts where plainitff works and lives.

FIRST CLAIM FOR RELIEF
(For libel-Against all defendants)

18. Plaintiff realleges and incorporates by reference paragraphs 1-17 as if restated in ful.

19. In the article for in camera satellite hearings, in all editions of the Sunday and weekly Boston Globe and Herald newspapers, the defendants and each of them jointly or severally, formulated, printed, published, republished, or circulated in Boston Herald and Boston Globe this artles, which was seen by plaintiff's family and employer that provided he was incarcerated, that he was a willing participant in the article and publishing his picture, and so on.

20. Each of the above statements contained in the story is and was false, untrue, and defamatory, and the article is

4

liberous on its face because:

a. The article wrongfully accuses plaintiff, and was intended to wrongfully accuses plaintiff, of actions, inferences and statements that are false, defamatory, and damaging.

b. The article clearly exposes plaintiff to hatred, contempt, ridicule, and obloquy because it falsely accuses and deplicts plaintiff, among others things, as an inmate who wastes tax payer monies on meaningless civil cases, and want a ride to the court, and wastes court resources and time in a heinous and criminal manner, inferred by the the court officers.

21. The defendants, each of them, jointly or separately, knew the article as it applies to plaintiff to be false, and that the article and editorials thereafter was intended by the defendants to convey false or defamatory statements about plaintiff.

22. The defedant, each of them, jointly or individually, wrote, printed, published and circulated, the liberous statements concerning plaintiff either with knowledge of the falsity of the inference and statements or with reckless disregard for the truth.

23. The statements and inferences appearing in the article were so understood by those who read the statements in it to have the defamatory meaning ascribed to it in this complaint and the defendants, and each of them, jointly or separately, intended the inmate in camera satellite hearings to be so understood and read by purchasers of the Boston Herald and Boston Globe newspapers.

24. At the time the article was pubicly distributed throughout the United States and the World, via internet, the defendants, each of them, jointly or separately, were in possession on information contrary to the constitutionality of the hearings and its opposition, also plaintiff's cases were not "inmate litigation" concerning being confined in jail moereso product liability, bodily injury, among others, See Exhibit 2. In fact in the actual hearing Spencer and Cratsley gotten into

a banter over his privacy rights, and told him plainitff wanted no part of the article or nothing to do with it or its inferences thereof, Exhibit 1, and that he would sue all parties who print his private issues, and that his image and name are his trademarks registered with the secretary of commerece. Nethertheless, the defendants, each of them, jointly or separately, without due regard for the truth, falsity, or malicious nature of statements, inferences, formulated, published, and disseminated article.

25. At the time the article was publicly ditributed throughout the United States and the world, the defendants, each of them, jointly or separately, failed to sufficiently investigate the truth of their statements. Thus, defendants, each of them, lacked any substantial reason to believe in the truth of the allegations contained in the inmate in camera hearings.

26. The defamatory inmate in camera hearings was written and published with reckless disregard for the truth of the matter, and defendants knew at the time the statements and inferences were formulated that they were false and injurious to plaintiff. The Inmate in camera hearings article was intended by defendants, each of them, to directly injure the plaintiff with respect to the plaintiff's reputation, character, and business, especially since plaintiff's picture was published.

27. Defendants, each of them, were also negligent in publishing the article. With ordinary and reasonable care, defendants would have realized, or could have discovered, that the article was obviously false and grossly liberous, offensive and damaging to plaintiff.

28. As a legal result of the Inmate in camera article and the false inferences and statements, plaintiff has suffered loss of reputation, shame, and mortification, all to plaintiff's general damage in a sum to be proved at trial, but in a sum not less than $7,000,000.00.

29. The defamatory statements contained in the Inmate in camera article were not privileged, or, can be considered by being in a court proceeding in a closed session. The statements

6

and inferences were intended by defendants, and each of them, jointly or separately, plaintiff has suffered damage to his cases in Suffolk Superior Court handled by Cratsley by his bias and prejudice (See Exhibits 1 and 2 which plaintiff realleges and incorporates by reference both Exhibits as facts reinstated as facts), property, business, trade, profession and occupation, all to the plaintiff's special damage in the sum to be determined at time of trial.

30. By engaging in the misconduct alleged above, the defendants each engaged in "despicable" conduct with the wilful and conscious disregrd for the rights of plaintiff. Defendants were aware of the probable dangerous consequences of their misconduct and wilfully and deliberately failed to avoid those consequences, including subjecting plaintiff to cruel and unjust hardship, in conscious disregard of plaintiff's rights. Thus, an award of exemplary and punitive damages is justified.

## SECOND CLAIM OF RELIEF
(For False Light Invasion Of Privacy - Against All Defendants)

31. Plaintiff realleges and incorporates by refernce paragraphs 1 through 30, and Facts in Exhibits 1 and 2, as if reinstated in full.

32. On the planning and scheduling the summary judgement hearings, the defendants, and each of them, jointly or individually, without plaintiff's consent, invaded plainitff's right to privacy by writing, printing, publishing, and circulating the article and editorials, which falsely depicts plaintiff as a jailhouse lawyer filing unwarranted cases on his confinement that is a waste of taxpayer dollars, and the court's resources who is behaved in a heinous and criminal manner,

33. The publication that invaded plaintiff's right to privacy are held by Boston Herald and Boston Globe and on the internet under their respectable sites.

34. Ths disclosure by defendants, and each of them jointly or separately, created publicity in the sense of public disclosure

to a large number of people, that caused calls to my mother from family and friends commiting on the article and my actions, not counting the Herald and Globe is read by hundreds of thousands of people each week throughout the United States, and throughout the world in this modern day and time (employers even scan web on potential employees and clients).

35. The publicity created by defendants, and each of them, jointly and separately, placed plaintiff in a false light in the public eye and his family members in that the Inmate in camera article was inferences and fabricated by defendants, and each of them, and publically conveyed, and was intended to convey, a calculated false and inaccurate impression of plaintiff as an inmate wanted to waste taxpayer monies and court time and resources on nonessential matters.

36. The publicity created by the Inmate in camera article was highly objectionable to plaintiff, and would be to any person of ordinary sensibilities. The article made plaintiff the object of scorn and ridicule by many residents of Suffolk County, the State of Massachusetts, citizens of the United States, and in general people throughout the world, and was intended to and did directly injure the plaintiff with respect to the plaintiff's right to be alone, as well as plaintiff's reputation, character, and business.

37. The formulation, publication, and public dissemination of the Inmate in camera article by the defendants was done with malice in that it was done with all or some of defendant's knowledge of the article's falsity, or in reckless disregard of the truth. At all relevant times, all or some of the defendants were aware, or should have been aware, of facts contrary to the defendants' malicious allegations.

38. The publicity created by defendants, and each of them, was done with malice in that it was made either with knowledge of the falsity of the inferences and statements or in reckless disregard of the truth. The statements or inferences describing plaintiff's actions, character and intentions were calculated falsehoods.

39.   Defendants, and each of them, were also negligent in publishing the Inmate in camera hearings article. With ordinary and reasonable care, defendants would have realized, or could have discovered, that the article was obviously false and grossly libelous, offensive, and damaging to plaintiff.

40.   As a legal result of the article's story, plaintiff has suffered a loss of reputation, shame, and mortification, all to his general damage in a sum not determined at the time, but in excess of $1,500,000.00.

41.   As a further legal result of the above-described false and reckless statements, plaintiff has suffered severe emotional distress, all to his general damage, in a sum not determined at this time, but on excess of $1,500,00.00.

42.   As a further legal result the above mentioned disclosure, plaintiff has suffered injury in his business, all to the plaintiff's special damage in an amount to be proven at trial.

43.   In making the disclosure described above, defendants, and each of them are guilty of "despicable" conduct amounting to oppression, fraud, or malice in that the defendants made disclosure with the wilful disregard of plaintiff's rights. Defendants' acts in formulating, publishing, and disseminating the Inmate in camera article in the Boston Herald and Boston Globe were done with the knowledge by defendants that these acts would cause plaintiff to suffer great humiliation, mental anguish, and injury. Defendants' acts were therefore willful, wanton, intentional, and actually malicious and oppressive, justifying the award of examplary and punitive damages according to proof at trial.

THIRD CLAIM FOR RELIEF
(For Invasion of Privacy-Publication of Private Facts
-Against all Defendants)

44.   Plaintiff realleges paragraphs 1-43 above, and incorporates them by reference, and the facts in both Examples.

45. Plaintiff became aware in 2010-2011, defendants and each of them, without plaintiff's concent, unreasonably invaded plaintiff's solitude and private affairs by publishing in the Boston Herald and Boston Globe his picture and an article about inmate in camera hearings, which includes his private court matters and cases, among others.

46. As previously alleged, the defendants' publication of the Inmate in camera hearings eas publicly disseminated in the Commonwealth of Massachusetts, the United States and internationally.

47. Facts disclosed about the plaintiff were private facts that plaintiff desired and was entitled to keep private. The facts disclosed about plaintiff were not newsworthy and were discovered after the illegal bias and prejudice of one or more of the defendants.

48. The disclosure by defendants of the above facts was offensive and objectionable to plaintiff and to a reasonable person of ordinary sensibilities.

49. In order to obtain the above-described private facts, defendants, and each of them with actual malice, unlawfully obtained materials regarding plaintiff.

50. As a proximate result of the above-described publication, plaintiff has suffered loss of trademark reputation, shame, and mortification, all to his general damage in the sum not less than $1,500,000.00.

51. Defendants, and each of them, knew that the formulation, publication, and public dissemination of the statements and inferences based on the same contained in the article would be grossly offensive to plaintiff.

52. As a further legal result of the above-described false and reckless statements and inferences conceived based upon the same, plaintiff has suffered severe emotional distress, all to his general damage, in the sum not determined at this time, but in excess of $1,500,000.00.

53. As a further result of the above-mentioned disclosure, plaintiff has suffered injury in the public sector employment

and start-up catering company, all to the plaintiff's special damage in the amount to be proven at trial.

54. In making the disclosure described above, defendants, and each of them, are guilty of "despicable" conduct amounting to oppression, fraud, or malice in that defendants made the disclosure with a willful disregard of plaintiff's rights. Defendants' acts in formulating, publishing, and disseminating the Inmate in camera hearing article in the Boston Herald and Boston Globe were done with the knowledge by defendants that these acts would cause plaintiff to suffer great humiliation, mental anguish, and injury. Defendants' acts were therefore willful, wanton, intentional and actually malicious and oppressive, so as to justify the award of exemplary and punitive damages according to proof at trial.

FOURTH CLAIM FOR RELIEF
(For Common-Law Invasion of Privacy-Against All Defendants)

55. Plaintiff relleges paragraphs 1-54 above and facts within both Exhibits and incorporates them by reference.
56. With the article defendants, jointly and separately, without plaintiff's consent, invaded plaintiff's right to privacy by knowingly appropriating and using plaintiff's name and photograph in article.
57. The article and picture, and exposure of being incarcerated is the basis of the invasion of privacy was circulated and on the defendants website.
58. The appropriation was unauthorized and without the plaintiff's consent. See Exhibits 1 and 2
59. Defendants' conduct involved the appropriation of plaintiff's name and photograph in the article, his registered trademark, without consent, and constitutes a violation of private and public Uniform commercial codes, common law among others was unauthorized and done for defendants' benefit and advantage, pencuniary gain, and profit.
60. As a legal result of defendants' previous mentioned acts,

11

and each of them, plaintiff has suffered humiliation, mental anguish, and emotional duress. Plaintiff has suffered substantial general damages in an amount not determined at this time. Plaintiff alleges that his damages in this regrad are in an amount not less than $1,500,000.00. In addition, plaintiff is entitled to the profits derived by defendants from the unauthorized use of plaintiff's name and photograph.

61. As a further legal result of the conduct of defendants and each of them, plaintiff's reputation has been severely damaged in that the Inmate in camera article depicts plaintiff in a false and damaging fashion.

62. Defendants' acts in formulating, publishing, and disseminating the Inmate in camera article in Boston Herald and Boston Globe were done with knowledge of defendants that these acts would cause plaintiff to suffer great humiliation, mental anguish, and injury. Defendants' acts were, therefore, "dispicable" conduct, willful, wanton, intentional, and actually malicious and oppressive, so as to justify an award of examplary and punitive damages.

FIFTH CLAIM FOR RELIEF
(For Intentional Infliction of Emotional Distress-Against All Defendants)

63. Plaintiff realleges paragraphs 1 through 62 above, and incorporates them by reference.

64. Defendants' conduct in writing, publishing and, circulating the Inmate in camera hearings article was intentional and malicious and done for the purpose of causing plaintiff to suffer humiliation and mental anguish. Defendants' conduct in confirming and ratifying these acts was done with knowledge that plaintiff would suffer emotional distress distress and was done with a wanton and reckless disregard of the consequences to Plaintiff.

65. As a direct and proximate result of the defendants' scandalous and outregeous acts, plaintiff has suffered humiliation, mental anguish, and emotional distress, all to plaintiff's

Case 1:15-cv-10022-GAO   Document 1   Filed 01/02/15   Page 13 of 15

damage in the amount not less than $1,500,000.00.

66. The article clearly exposed plaintiff to hatred, contempt, ridicule, and obloquy, because it falsely deplicted plaintiff as a waster of taxpayer monies with worthless cases who wanted a ride out to the court on a feild trip.

67. Defendants' acts in formulating, publishing and disseminating inmate in camera article in the Boston Herald and Boston Globe were done with the knowledge by defendants that these acts would cause plaintiff to suffer great humiliation, mental anguish, and injury. Defendants' acts were, therefore, despicable conduct and so willful, wanton, intentionally and actually malicious and oppressive as to justify the award of exemplary and punitive damages.

PRAYER

Plaintiff requests judgement against defendants, and each of them, as follows:

On the First Claim for Relief:

A.   For general damages according to proof, but in excess of $1,500,000.00;

B.   For special damages in an amount to be determined at trail, and for interest on this amount at the legal interest rate;

C.   For punitive and exemplary damages in an amount to be determined at trial;

D.   For costs of suit incurred; and

E.   For any other and further relief that the court may deem just and proper.

On the Second Claim for Relief:

F.   For general damages according to proof, but in excess of $1,500,000.00

G.   For special damages in an amount to be determined at trial, and for interest on this amount at the legal interest rate;

H.   For puntive and exemplary damages in an amount to be determined at trial;

I.   For costs of suit incurred; and

13

J. For any other and further relief that the court may deem just and proper.

On the Third Claim for Relief

K. For general damages according to proof, but in excess of $1,500,000.00;

L. For special damages in an amount to be determined at trial, and the interest on this amount at legal interest rate;

M. For punitive and exemplary damages in an amount to be determined at trial;

N. For costs of suit incurred; and

O. For any other further relief that the court may deem just and proper.

On the Fourth Claim for Relief

P. For general damages according to proof, but in excess of $1,500,000.00;

Q. For special damages in the amount to be determined at trial, and the interest on this amount at legal interest rate;

R. For punitive and exemplary damages in an amount to be determined at trial;

S. For costs of suit incurred; and

T. For any other further relief that the court may deem just and proper.

On the Fifth Claim for Relief

U. For general damages according to proof, but in excess of $1,500,000.00;

V. For special damages in the amount to be determined at trial, and the interest on this amount at legal interest rate;

W. For puntive and exemplary damages in amount to be determined at trial;

X. For costs of suit incurred; and

Y. For any other and further relief that the court may deem just and proper.

Date: December 2014

Barry Spencer II
1 Administration Road
Bridgewater, MA 02324